IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| ROBERT HUDSON IMHOFF, IV,<br><br>Plaintiff,<br><br>v.<br><br>THE CITADEL, THE MILITARY COLLEGE OF SOUTH CAROLINA; LIEUTENANT GENERAL JOHN ROSA; LIEUTENANT COLONEL ROBERT SBERNA; CAPTAIN JOHN RYAN; MAJOR JON CRAIG; and CAPTAIN LEWIS JACKSON,<br><br>Defendants. | Civil Action No.<br>2:16-cv-2870-RMG<br><br>**COMPLAINT** |

NOW COMES Plaintiff Robert Hudson Imhoff, IV ("Imhoff"), by and through counsel, complaining of the above Defendants as follows:

**JURISDICTION**

1. This court has jurisdiction pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1367.

2. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) as all Defendants reside or may be found in this District and substantially all the events and omissions giving rise to the claims occurred in this District.

**PARTIES**

3. Plaintiff, Mr. Imhoff, is a cadet at The Citadel, The Military College of South Carolina ("The Citadel"). The Citadel is located in Charleston, South Carolina.

4. Mr. Imhoff resides in Upperco, Maryland when not attending school, but was domiciled on The Citadel campus when the events about which he complains occurred.

5. Mr. Imhoff has completed his sophomore year of schooling at The Citadel and has registered with the intent to begin his junior year on Sunday, August 21, 2016, but for the one-year expulsion further addressed herein. Classes begin on or about August 24, 2016.

6. Defendant The Citadel is a public college maintained and funded in significant part by the State of South Carolina.

7. Defendant Lieutenant General John Rosa ("Defendant Rosa") is, and at all relevant times was, the President of The Citadel. In his actions here at issue, Defendant Rosa was acting under the color of state law.

8. Defendant Lieutenant Colonel Robert Sberna ("Defendant Sberna") is, and at all relevant times was, the Assistant Commandant for Discipline at The Citadel. In his actions here at issue, Defendant Sberna was acting under color of state law.

9. Defendant Captain John Ryan ("Defendant Ryan") is, and at all relevant times was, a member of The Citadel's Reserve Officers Training Corps ("ROTC") program. In his actions here at issue, Defendant Ryan was acting under color of state law.

10. Defendant Major Jon Craig ("Defendant Craig") is, and at all relevant times was, the acting R Company TAC Officer at The Citadel. In his actions here at issue, Defendant Craig was acting under color of state law.

11. Defendant Captain Lewis Jackson ("Defendant Lewis") is, and at all relevant times was, the R Company Commander at The Citadel. In his actions here at issue, Defendant Lewis was acting under color of state law.

## FACTS

### Mr. Imhoff's Achievements at The Citadel

12. Since Mr. Imhoff was a very young child, he has wanted to serve in the military. Mr. Imhoff's grandfather, with whom Mr. Imhoff lived during much of his childhood, had a long career in the United States Army Air Corps, honorably serving the United States in World War II.

13. In high school, Mr. Imhoff was an "A" student and the President of his senior and junior classes. He has no criminal record.

14. However, for financial reasons, Mr. Imhoff was unable to attend a military college immediately after graduating from high school in Maryland. As a result he attended a local college, Towson University ("Towson"), to and from which he commuted nearly every day to save money. While at Towson, Mr. Imhoff distinguished himself both academically and as a member of the college's ROTC program. Ultimately, as a result of his hard work and persistence, Mr. Imhoff obtained a scholarship from the United States Army Cadet Command, which enabled him to attend The Citadel, beginning in the fall of 2014.

15. At The Citadel, Mr. Imhoff has excelled. Mr. Imhoff has maintained a 3.82 grade point average as a mechanical engineering major.

16. In the spring of 2016, Mr. Imhoff was advised that he was one of less than a dozen cadets at The Citadel admitted to United States Army Air Assault School.

### Mr. Imhoff's Service as a Squad Corporal

17. During his most recent semester at The Citadel, the second semester of Mr. Imhoff's sophomore year, Mr. Imhoff served as a Squad Corporal in The Citadel's Corps of Cadets.

18. In his role as Squad Corporal, Mr. Imhoff was charged by The Citadel to ensure the individual training, personal appearance and cleanliness of certain freshmen cadets ("knobs") at The Citadel.

19. Under The Citadel's rules and regulations, "If any cadet has poor personal appearance, is not clean and is inadequately trained, it is the result of the corporal not doing his or her job." Imhoff Aff., Ex. A.

20. Squad Corporals are sanctioned by The Citadel when any of the cadets under their supervision have poor personal appearances, are not clean, or are inadequately trained.

21. In the performance of his duties as a Squad Corporal, Mr. Imhoff was supervised by a more senior cadet, a Squad Sergeant with the initials N.G.

**<u>Mr. Imhoff is Inexplicably Charged with "Hazing"</u>**

22. Upon information and belief, on or about February 2016, one of the cadets for which Mr. Imhoff was responsible, a person with the initials D.M., complained to administrators at The Citadel that Mr. Imhoff and another cadet, a person with the initials A.M., had treated him and other knobs unfairly in connection with Mr. Imhoff and A.M. ensuring that he and the other cadets met The Citadel's rules and regulations.

23. Specifically, D.M. alleged that Mr. Imhoff and A.M. sanctioned knobs whom Mr. Imhoff and A.M. found violated The Citadel's rules or regulations by (1) directing the knobs to vigorously shine (or "blitz") the brass components of their uniforms ("brass"); (2) marking or scratching certain knobs' brass, then directing the knobs to shine the brass; and (3) taking metal letters ("company letters") given to knobs by the College.

24. D.M. also alleged that Mr. Imhoff directed him to not attend a reception with The Citadel officials; told him that he would make it harder for D.M. and his colleagues to get 4.0 GPAs; and required that he perform back-to-back push-ups without giving him enough breaks.

25. Cadets at The Citadel routinely perform push-ups, both as a form of exercise and discipline. The Citadel authorizes the discipline of cadets through push-ups.

26. In response to D.M.'s allegations against Mr. Imhoff and A.M., The Citadel charged Mr. Imhoff with "Hazing" under The Citadel's rules and regulations.

27. The Citadel charged A.M. with a "Major Violation of 4th Class System" under The Citadel's rules and regulations for the same allegations, a materially lesser offense than Hazing.

28. Section 1.5.3 of The Citadel's Bluebook, which contains many of The Citadel's rules and regulations, at all relevant times defined Hazing (the only offense for which Mr. Imhoff was charged) as "wrongful striking, an unauthorized laying hand upon, threatening with violence, or offering to do bodily harm by any student to another student, or any other unauthorized treatment by one student toward another student of a tyrannical, abusive, shameful, insulting, or humiliating nature; or otherwise requiring any student to perform any personal service for another student except as specifically provided for in Cadet Regulations." Imhoff Aff., Ex. B.

29. The maximum punishment for Hazing includes expulsion from The Citadel. By contrast, the maximum punishment for a Major Violation of 4th Class System is suspension for one semester.

**<u>Mr. Imhoff is Inexplicably Found Guilty of Hazing</u>**

30. The matter was subsequently submitted to a Commandant's Board (the "Board") at The Citadel, which was organized and convened by Defendant Sberna. The members of the Board were Defendant Sberna, Defendant Ryan, Defendant Craig, and Defendant Jackson.

31. On or about March 10, 2016, the Board held a joint hearing on the allegations asserted against Mr. Imhoff and A.M.

32. At the hearing, the Board received testimony from several cadets, including the knobs who were under Mr. Imhoff's supervision.

33. Defendant Sberna effectively served as prosecutor, judge and jury.

34. At the hearing, which was recorded, Defendant Sberna (1) cut off and prohibited witnesses from providing evidence and statements that otherwise would have established that Mr. Imhoff did not commit several of the acts alleged against him; (2) did not allow witnesses to fully answer Mr. Imhoff's or his student representative's questions; (3) overtly encouraged witnesses to provide false testimony to support his pre-determined belief that Mr. Imhoff had engaged in certain misconduct or had a certain mental state when acting; (4) demonstrated a complete disinterest in receiving the actual facts; and (4) led witnesses and interjected unsupported statements not otherwise before the Board.

35. At or shortly after the conclusion of the hearing, Defendant Sberna and the Board found Mr. Imhoff guilty of Hazing, ostensibly based on the Board's supposed findings that Mr. Imhoff "interfer[ed] or obstruct[ed] a disciplinary investigation, vandal[ized] knob brass, t[ook] brass from knobs without reimbursement, stole company letters (Rs), impeded an investigation by taking all blitzed brass from the knobs when he discovered an investigation was being conducted and gave them to Cadet [A.M.]." Imhoff Aff., Ex. C.

36. With regard to A.M., Defendant Sberna and the Board made nearly identical findings. They found that A.M. "interfer[ed] or obstruct[ed] a disciplinary investigation, assisted in collecting up and hiding 4C blitzed brass in an attempt to impede investigation and get rid of evidence, vandal[ized] knob brass and made squad blitz brass."

37. Without any explanation, however, Defendant Sberna and the Board did not find A.M. guilty of Hazing. Instead, A.M. was merely found responsible for a "Major Violation of 4th Class System" of The Citadel's rules and regulations.

38. Just as the Board decided that A.M. did not commit Hazing, as that offense is defined by The Citadel's rules and regulations, the Commandant's Board should have similarly concluded that Mr. Imhoff did not commit Hazing.

39. The Board's conclusion with respect to Mr. Imhoff was illogical, inconsistent and not supported by the evidence that was before it.

40. The Board was not presented with sufficient evidence from which it could have reasonably concluded that Mr. Imhoff committed Hazing. Absolutely no evidence was presented to the Board that Mr. Imhoff wrongfully touched, struck or did bodily harm to any student, or required any student to perform any personal service for him.

41. No evidence was presented to the Board that Mr. Imhoff treated any other student in an unduly oppressive or tyrannical manner.

42. No evidence was presented to the Board that Mr. Imhoff required any student to undertake unauthorized physical activity.

43. In fact, at the hearing: (1) D.M. testified that Mr. Imhoff offered him academic advice and guidance; (2) several other students testified that Mr. Imhoff worked hard to ensure that the students under his supervision, such as D.M., obtained the best grades they possibly could; and (3) D.M. never alleged that Mr. Imhoff actually undertook any act aimed at harming him physically or emotionally.

44. Upon information and belief, D.M. is now being investigated by The Citadel for making allegedly false statements in connection with the allegations he asserted against Mr. Imhoff.

45. Moreover, even assuming for the sake of argument that the taking of brass could constitute Hazing as that offense is defined by The Citadel's rules and regulations, which it cannot, the uncontradicted witness testimony at the hearing was that any knobs from whom Mr. Imhoff may have taken brass or letters agreed to having their letters taken if someone in their squad was deficient or violated The Citadel's rules or regulations (as properly determined by Mr. Imhoff in his capacity as their Squad Corporal).

46. Furthermore, even assuming for the sake of argument that interfering with or obstructing The College's investigation into possible misconduct in connection with D.M.'s allegations could constitute Hazing as that offense is defined by The Citadel's rules and regulations, which it cannot, the Commandant's Board was not presented with sufficient evidence from which it could have reasonably found that Mr. Imhoff interfered with or obstructed any investigation by The Citadel.

47. The Board received absolutely no evidence which could have established (1) when Mr. Imhoff allegedly took brass from students with the purpose of interfering with any investigation; (2) when The Citadel's investigation at issue began; (3) any awareness (as of the time Mr. Imhoff allegedly took brass from students) by Mr. Imhoff of any investigation; and (4) that Mr. Imhoff, in fact, took brass from students during an investigation by the College.

48. Moreover, The Citadel's rules and regulations provide entirely separate charge and punishment for "Interfering or obstructing a disciplinary investigation." Imhoff Aff., Ex. B, Annex B.

49. Defendant Sberna assured Mr. Imhoff in a private meeting prior to the hearing of the Board that "Interfering [with] a disciplinary investigation" could not be combined with another "on-campus" punishment (i.e., most 4th Class Major Violations) for a resulting "off-campus" punishment (e.g., suspension, dismissal, expulsion, etc.). Furthermore, the offense for interfering with an investigation cannot be combined with another punishment to justify a hazing charge.

50. Even assuming for the sake of argument that Mr. Imhoff was in fact aware of an investigation by The Citadel when he allegedly took brass from knobs, which he was not, Mr. Imhoff did not commit Hazing because such conduct plainly does not constitute unauthorized treatment of, or physical contact, with a student, let alone tyrannical behavior against a student.

51. Upon information and belief, Mr. Imhoff's supervisor, N.G., knew of the ways in which Mr. Imhoff executed his duties as Squad Corporal.

52. No allegations were made against N.G., or any other person who was aware or should have been aware of any actions by Mr. Imhoff (or were responsible for ensuring that those actions complied with The Citadel's rules and regulations).

53. The Citadel's rules and regulations require that any person aware of hazing must report such misconduct to college officials. Allowing any hazing to occur, condoning acts of hazing, or failing to immediately stop an incident of hazing where direct physical injury is likely is punishable by up to expulsion from The Citadel.

54. Upon information and belief, neither N.G. nor any other person at The Citadel, other than D.M., alleged that Mr. Imhoff engaged in any misconduct. Neither N.G. nor any other person at The Citadel was sanctioned by The Citadel in connection with Mr. Imhoff's execution of his duties as Squad Corporal.

55. Mr. Imhoff is unaware of any similar case in which any student has been charged or found guilty of Hazing.

56. Mr. Imhoff plainly did not violate The Citadel's rules and regulations prohibiting Hazing.

57. The conclusion of the Board that Mr. Imhoff committed the offense of Hazing was not supported by the facts and witness testimony provided to the Board.

**Mr. Imhoff's Administrative Appeal is Inexplicably Denied**

58. Under Section 6.10.6.3 of The Citadel's Bluebook, cadets who are found guilty by the Board of violating The Citadel's rules and regulations and who are suspended, dismissed or expelled may (internally) appeal the decision of the Board on two narrow grounds: (1) the hearing officer or Board failed to follow due process; and (2) significant information was discovered after the Board's hearing, such information could not have been presented to the Board, and the result of the hearing would have been different had the information been presented to the Board.

59. On or about April 25, 2016, Mr. Imhoff appealed the decision of Defendant Sberna and the Board on these two grounds.

60. Mr. Imhoff's appeal was summarily denied.

**Mr. Imhoff Has Suffered and Will Continue to Suffer Irreparable and Substantial Harm at the Hands of Defendants**

61. As a direct and proximate result of the Defendants' misconduct and violations of Mr. Imhoff's rights, Mr. Imhoff has suffered and will continue to suffer irreparable harm and substantial damages. The harm and damages include, but are not limited to, an imminent dismissal, which will result in a permanent liberty deprivation manifested by the permanent loss of his college education, and a liberty deprivation manifested by stigma through the loss of reputation,

humiliation, embarrassment, inconvenience, mental and emotional anguish and distress and loss of scholarship funds valued at approximately $200,000.

62. Further, the harm and damages to Mr. Imhoff caused by Defendants include Mr. Imhoff losing admission to Army Air Assault School, Mr. Imhoff not being able to attend the Cadet Leadership Course this year, which will delay his professional advancement for at least one year, and Mr. Imhoff having a large and permanent barrier to achieving his childhood dream of having a long and fulfilling career in the military, as Hazing (regardless how that term is in fact defined) is considered by many members of the military to be tantamount to a dishonorable discharge.

63. Other damages to Mr. Imhoff as a result of Defendants' misconduct include litigation expenses, including attorney's fees, costs and other compensatory damages.

## FIRST CLAIM FOR RELIEF

Violation of Fourteenth Amendment
Procedural and Substantive Due Process Rights under 42 U.S.C. §§1983
(All Defendants)

64. Mr. Imhoff hereby incorporates each and every paragraph above as if fully restated herein.

65. Mr. Imhoff did not receive a fair hearing from Defendants.

66. Defendants violated Mr. Imhoff's rights to Due Process under the United States Constitution.

67. Defendants denied Mr. Imhoff Due Process by impairing Mr. Imhoff's right to call witnesses and present evidence.

68. By essentially vesting the prosecutorial and adjudicatory functions of the Board and hearing process with a single person, Defendant Sberna, Defendants denied Mr. Imhoff Due Process.

69. Defendants denied Mr. Imhoff Due Process, as the decision of Defendant Sberna and the Board was not reviewable except as to certain narrowly defined categories.

70. Defendants denied Mr. Imhoff Due Process and the right to an effective appeal, as The Citadel's rules and regulations did not allow Mr. Imhoff to appeal the decision of Defendant Sberna and the Board on the ground that their decision was not supported by the evidence, or that it was otherwise unfair, unwise, or simply wrong.

71. Defendants denied Mr. Imhoff Due Process by imposing an arbitrary punishment, inconsistent with the evidence, facts, circumstances, and The Citadel's rules and regulations.

72. Though Defendants provide a framework for purported Due Process, Defendants denied Mr. Imhoff Due Process by not providing meaningful application of said framework, and in fact, using said framework as merely a pretense of Due Process.

73. As a direct and proximate result of the violations of Mr. Imhoff's Fourteenth Amendment rights to Due Process, Mr. Imhoff has suffered and will continue to suffer irreparable harm and substantial damages.

## SECOND CLAIM FOR RELIEF

Violation of South Carolina Constitutional Rights Pursuant to Article 1, § 3
(All Defendants)

74. Mr. Imhoff hereby incorporates each and every paragraph above as if fully restated herein.

75. Mr. Imhoff did not receive a fair hearing.

76. Defendants violated Mr. Imhoff's rights to Due Process under the South Carolina Constitution.

77. Defendants denied Mr. Imhoff Due Process by impairing Mr. Imhoff's right to call witnesses and present evidence.

78. By essentially vesting the prosecutorial and adjudicatory functions of the Board and hearing process with a single person, Defendant Sberna, Defendants denied Mr. Imhoff Due Process.

79. Defendants denied Mr. Imhoff Due Process, as the decision of Defendant Sberna and the Board was not reviewable except as to certain narrowly defined categories.

80. Defendants denied Mr. Imhoff of Due Process and the right to an effective appeal, as The Citadel's rules and regulations did not allow Mr. Imhoff to appeal the decision of Defendant Sberna and the Board on the ground that their decision was not supported by the evidence, or that it was otherwise unfair, unwise, or simply wrong.

81. Defendants denied Mr. Imhoff Due Process by imposing an arbitrary punishment, inconsistent with the evidence, facts, circumstances, and The Citadel's rules and regulations.

82. Though Defendants provide a framework for Due Process, Defendants denied Mr. Imhoff Due Process by not providing meaningful application of said framework, and in fact, using said framework as merely a pretense of Due Process.

83. As a direct and proximate result of the violations of Mr. Imhoff's rights to Due Process under the South Carolina Constitution, Mr. Imhoff has suffered and will continue to suffer irreparable harm as well as substantial damages.

## THIRD CLAIM FOR RELIEF
Breach of Contract
(Defendant The Citadel)

84. Mr. Imhoff hereby incorporates each and every paragraph above as if fully restated herein.

85. Mr. Imhoff and The Citadel entered into a binding agreement supported by good and valuable consideration.

86. The Citadel's rules and regulations, including The Citadel's Blue Book, are a part of the agreement.

87. Mr. Imhoff performed all obligations required of him under the agreement, or has had the performance of any obligations excused.

88. The Citadel breached the agreement by violating Mr. Imhoff's rights, including his Due Process rights.

89. The Citadel breached the agreement and denied Mr. Imhoff Due Process by impairing Mr. Imhoff's right to call witnesses and present evidence, in direct violation of The Citadel's Blue Book (including Section 6.10.7 thereof).

90. By essentially vesting the prosecutorial and adjudicatory functions of the Board and hearing process with a single person, Defendant Sberna, The Citadel denied Mr. Imhoff Due Process and breached the agreement.

91. The Citadel breached the agreement and denied Mr. Imhoff Due Process, as the decision of Defendant Sberna and the Board was not reviewable except as to certain narrowly defined categories.

92. The Citadel breached the agreement and denied Mr. Imhoff Due Process and the right to an effective appeal, as The Citadel's rules and regulations did not allow Mr. Imhoff to appeal the decision of Defendant Sberna and the Board on the ground that their decision was not supported by the evidence, or that it was otherwise unfair, unwise, or simply wrong.

93. The Citadel breached the agreement and denied Mr. Imhoff of Due Process by imposing an arbitrary punishment, inconsistent with the evidence, facts, circumstances, and The Citadel's rules and regulations.

94. As a result of these breaches of the agreement by The Citadel, Mr. Imhoff has suffered damages.

**FOURTH CLAIM FOR RELIEF**
Injunctive Relief
(All Defendants)

95. Mr. Imhoff hereby incorporates each and every paragraph above as if fully restated herein.

96. Mr. Imhoff has suffered irreparable injury and continues to suffer as a result of the above stated acts. Mr. Imhoff has no adequate or complete remedy to protect his constitutional rights and to redress the wrongs and unconstitutional acts complained of, other than immediate and continuing injunctive relief.

97. Should injunctive relief be denied, Mr. Imhoff will not be able to return to school and will lose his scholarship, and therefore his liberty to attend any college or university thereafter.

98. Mr. Imhoff's injury is the loss of constitutionally protected interests and rights. Mr. Imhoff has exhausted all internal administrative remedies available to him prior to seeking relief from the Court. The public has a strong interest in the enforcement of the Constitution and in the resolution of the inequities in this case.

99. Mr. Imhoff is likely to prevail on the merits of his claims against Defendants.

**JURY TRIAL DEMAND**

Mr. Imhoff hereby demands that all issues in this case triable before a jury be so tried.

**PRAYER FOR RELIEF**

1. For appropriate injunctive relief, including the temporary reinstatement of Mr. Imhoff as a cadet during the pendency of this action;

2. For appropriate declaratory relief, including the permanent reinstatement of Mr. Imhoff as a cadet;

3. For monetary damages in an amount to be determined at trial;

4. For appropriate equitable relief, including the enjoining and permanent restraint of the constitutional violations outlined herein, an injunction barring Defendants and those acting in concert with them from engaging in any form of retaliation or reprisal against Mr. Imhoff, and to take such action as is necessary to ensure that the effects of the unconstitutional and unlawful practices are eliminated and do not continue to affect Mr. Imhoff's constitutional rights;

5. For an award of reasonable attorney's fees and costs incurred on Mr. Imhoff's behalf against all Defendants; and

6. For all other relief as this Court deems just and proper.

This the 18th day of August, 2016.

/s/ S. Wilson Quick
S. Wilson Quick
Federal ID No. 11910
wquick@brookspierce.com
BROOKS, PIERCE, McLENDON,
HUMPHREY & LEONARD, LLP
P.O. Box 1800
Raleigh, NC 27602
Telephone: (919) 573-6213
Facsimile: (336) 232-9214

Kearns Davis
NC State Bar No. 22014
kdavis@brookspierce.com
Justin N. Outling
NC State Bar No. 38409
joutling@brookspierce.com

BROOKS, PIERCE, McLENDON,
HUMPHREY & LEONARD, LLP
230 N. Elm Street, Suite 2000
Greensboro, NC 27401
Telephone: (336) 373-8850

*Applications for Admission Pro Hac Vice Forthcoming*