IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| ROBERT HUDSON IMHOFF, IV,<br><br>Plaintiff,<br><br>v.<br><br>THE CITADEL, THE MILITARY COLLEGE OF SOUTH CAROLINA; LIEUTENANT GENERAL JOHN ROSA; LIEUTENANT COLONEL ROBERT SBERNA; CAPTAIN JOHN RYAN; MAJOR JON CRAIG; and CAPTAIN LEWIS JACKSON,<br><br>Defendants. | Civil Action No.<br>2:16-cv-2870-RMG<br><br>**AFFIDAVIT OF<br>ROBERT HUDSON IMHOFF, IV** |

The Affiant, Robert Hudson Imhoff, IV, being duly sworn, deposes and says as follows:

1. I am over 18 years of age and I am under no known disability which would render me incompetent to make this Affidavit.

2. I have personal knowledge of the facts set forth herein and all statements made are true and correct.

**Background**

3. I am a rising student and cadet at The Citadel, The Military College of South Carolina ("The Citadel").

4. I have a 3.82 GPA and major in mechanical engineering.

5. While attending school, I live on The Citadel's campus in Charleston, South Carolina. When not attending school, I live in Upperco, Maryland with my parents.

6. I am very proud to be a student and cadet at The Citadel. Being a student and cadet at The Citadel represents a great accomplishment for me.

7. Since I was a child, I have wanted to serve in the military.

8. During much of my childhood, my grandfather lived with me and my parents. My grandfather often told me stories about his long career in the United States Army Air Corps and his service to the United States in World War II. He impressed upon me the importance of service and hard work.

9. In high school, I was an “A” student and the President of my school’s senior and junior classes. I have no criminal record and, until the matter that is the subject of the lawsuit I filed (with the help and support of my parents), no one has really ever even suggested, let alone alleged, that I have acted dishonorably or violated any rules with which I was supposed to comply.

10. For financial reasons I was unable to attend a military college immediately after graduating from high school in Maryland. As a result, I attended a relatively inexpensive local college, Towson University (“Towson”), and commuted to and from Towson nearly every day to save money.

11. While at Towson, I was blessed to do well both academically and as a member of the college’s ROTC program. Ultimately, I received a scholarship from the United States Army Cadet Command, which allowed my family the money I needed to attend The Citadel, beginning in the fall of 2014.

12. In the spring of 2016, I was advised that I was one of less than a dozen cadets at The Citadel admitted to United States Army Air Assault School, positioning me well for obtaining my dream job of being an Army infantry officer.

**Service as Squad Corporal**

13. During the second semester of my sophomore year at The Citadel, my most recent semester at the college, I served as a Squad Corporal in The Citadel's Corps of Cadets.

14. I was not obligated to serve The Citadel as a Squad Corporal. I did so because I love The Citadel and believed that the experience I would gain through serving in the position would help the college and help me to reach my professional goals. I also wanted to improve the lives and the younger cadets and make them more successful.

15. As a Squad Corporal, I was responsible for ensuring the individual training, personal appearance and cleanliness of a group ("squad") of freshmen cadets ("knobs") at The Citadel.

16. Under The Citadel's rules and regulations, "If any cadet has poor personal appearance, is not clean and is inadequately trained, it is the result of the corporal not doing his or her job." Ex. A. The document attached hereto as Exhibit A, which I downloaded from http://www.citadel.edu/root/images/commandant/cpl%20lesson%201.pdf, is a true and correct copy of a college presentation that reflects this fact.

17. As a military college, The Citadel is hierarchical. In performing my duties as a Squad Corporal, I was supervised by a more senior cadet, a Squad Sergeant with the initials N.G..

18. Senior cadets were subject to sanction, and in fact were sanctioned, by The Citadel for failure to ensure that the cadets junior to them did not properly perform their duties.

19. Squad Corporals were subject to sanction, and were in fact sanctioned, by The Citadel when any of the cadets under their supervision had poor personal appearances, were not clean, or were inadequately trained.

**Wrongfully Charged with "Hazing"**

20. It is my understanding that in February 2016, one of the cadets in the squad for which I was responsible, a person with the initials D.M., independently filed a complaint with administrators at The Citadel, alleging that I and another cadet, a person with the initials A.M., had treated D.M. and other knobs unfairly in my and A.M.'s effort to ensure that D.M. and the other cadets met The Citadel's rules and regulations. D.M. alleged that A.M. and I (1) directed the knobs to vigorously shine (or "blitz") the brass parts of their uniforms ("brass"); (2) marked or scratched certain knobs' brass, then told the knobs to shine the brass; and (3) took metal letters ("company letters") given to knobs by the College. D.M. also falsely claimed that I wrongfully told him to not attend a reception with The Citadel officials; that I told him that I would make it harder for him and his colleagues to get 4.0 GPAs; and that I required him to perform back-to-back push-ups without giving him enough breaks.

21. As a military college, cadets at The Citadel routinely performed push-ups, as a form of both exercise and discipline. The Citadel authorizes the discipline of cadets through push-ups.

22. In response to D.M.'s allegations, The Citadel charged me with Hazing under its Blue Book, which contains the college's rules and regulations.

23. A true and correct copy of The Citadel's Blue Book is attached hereto as Exhibit B.

24. I was, and I still am, in complete shock that I was charged with Hazing. I recognize that I am young and accept that at times I have fallen short of the high standards I have set for myself, but I simply did not haze D.M. or any other cadet or student at The Citadel.

25. The Blue Book states that Hazing is the "wrongful striking, an unauthorized laying hand upon, threatening with violence, or offering to do bodily harm by any student to another

student, or any other unauthorized treatment by one student toward another student of a tyrannical, abusive, shameful, insulting, or humiliating nature; or otherwise requiring any student to perform any personal service for another student except as specifically provided for in Cadet Regulations." Ex. B.

26. Quite simply, however, I did not do (and would never do) anything that could even arguably constitute or rise to the level of Hazing.

27. Moreover, The Citadel charged A.M. with "Major Violation of 4th Class System," a significantly lesser offense than Hazing, for nearly the identical allegations as those asserted against me.

28. The maximum punishment for Hazing includes expulsion from The Citadel. The maximum punishment for a Major Violation of 4th Class System is suspension for one semester.

**Fundamentally Unfair Hearing**

29. After I was charged with Hazing, the matter was subsequently submitted to a Commandant's Board (the "Board") at The Citadel.

30. The Board was organized and convened by Lieutenant Colonel Robert Sberna. Mr. Sberna, Captain John Ryan, Major Jon Craig, and Cadet Captain Lewis Jackson were the members of the Board.

31. On March 10, 2016, the Board held a joint hearing for me and A.M. for the supposed reason of considering the facts, testimony and evidence to determine whether we were guilty of the charges asserted against us.

32. However, the hearing was conducted unfairly, unjustly, and without due process.

33. At the hearing, the Board received testimony from several cadets, including the knobs who were under my supervision.

34. However, Mr. Sberna effectively served as prosecutor, judge and jury. It was clear that he had, for whatever reason, determined before the hearing that I should be found guilty of Hazing.

35. At the hearing, which was recorded by The Citadel, Mr. Sberna ignored the actual facts and testimony presented, as well as the very definition of Hazing in the Blue Book.

36. A true and correct transcript of the recording of the hearing is attached hereto has Exhibit D.

37. Mr. Sberna: (1) cut off and prevented witnesses from providing evidence and statements that otherwise would have established that I did not do many of the acts alleged against me; (2) did not allow the persons who testified to fully answer my student representative's or my questions; (3) overtly urged witnesses to give false testimony to support his pre-determined belief that I engaged in certain misconduct or had a certain thoughts when acting; (4) was completely disinterested in hearing the actual facts; and (4) led witnesses and interjected unsupported statements.

38. In connection with the hearing, Mr. Sberna and the Board remarkably found me guilty of Hazing.

39. A true and correct copy of a March 11, 2016 memo from the Office of the Commandant to Defendant Rosa, which I received from The Citadel and which contains the Board's findings, is attached hereto as Exhibit C.

40. The Board's findings contended that I "interfer[ed] or obstruct[ed] a disciplinary investigation, vandal[ized] knob brass, t[ook] brass from knobs without reimbursement, stole company letters (Rs), impeded an investigation by taking all blitzed brass from the knobs when [I] discovered an investigation was being conducted and gave them to Cadet [A.M.]." Ex. C.

41. With regard to A.M., Mr. Sberna and the Board made almost the exact same findings as they did with regard to me. They found that A.M. "interfer[ed] or obstruct[ed] a disciplinary investigation, assisted in collecting up and hiding 4C blitzed brass in an attempt to impede investigation and get rid of evidence, vandal[ized] knob brass and made squad blitz brass." Ex. C.

42. However, Mr. Sberna and the Board did <u>not</u> find A.M. guilty of Hazing. Rather, A.M. was merely found responsible for a "Major Violation of 4th Class System" of The Citadel's rules and regulations. I do not know why they concluded that A.M. and I were guilty of different offenses, notwithstanding the fact we allegedly engaged in essentially the same conduct.

43. Further, I do not know how the Board could have concluded that I committed Hazing.

44. I did not wrongfully touch, strike or physically harm any student. I did not require any student to perform any personal service for me. I did not treat any other student in an unduly oppressive or tyrannical manner. I did not require any student to undertake unauthorized physical activity. Nothing was said or presented at the Board hearing to the contrary.

45. D.M. testified that I offered him academic advice and guidance.

46. Further, several other students testified that I worked hard to ensure that the knobs in my squad, such as D.M., got the best grades they could.

47. Moreover, D.M. never claimed I actually tried to harm him physically or emotionally.

48. I have been told that D.M. is now being investigated by The Citadel for making false statements in connection with the claims he made against me.

49. I also did not wrongfully take or steal anyone's brass or letters.

50. Any knobs from whom I took brass or letters first agreed to having their brass or letters taken if, in the exercise of my judgment as their Squad Corporal, I determined they were deficient or violated The Citadel's rules.

51. A true and correct copy of a document I received from The Citadel, containing statements from witnesses, is attached hereto as Exhibit E.

52. I also did not interfere with or obstruct any investigation by The Citadel into the allegations D.M. leveled against me.

53. Moreover, The Citadel has separate rules and a separate offense for interfering with or obstructing a disciplinary investigation.

54. In fact, Mr. Sberna assured me in a private meeting before the Board's hearing that The Citadel's interfering with a disciplinary investigation offense could not be combined with another "on-campus" punishment (i.e., most 4th Class Major Violations) for a resulting "off-campus" punishment (e.g., suspension, dismissal, expulsion, etc.). Furthermore, the offense for interfering with an investigation could not be combined with another punishment to justify a Hazing charge.

55. To my knowledge, no allegations were made against N.G., or any other person who was or should have been aware of any actions by me in connection with my service as a Squad Corporal.

56. I am not aware of any similar case in which any student has been charged or found guilty of Hazing.

57. When I was a freshman, less than a year before the Board's hearing, conduct identical to the alleged misconduct by me was commonplace. The Citadel was aware of the

conduct. Students who engaged in such conduct were not sanctioned by The Citadel for Hazing or any other offense.

**Appeal Denied**

58. On April 25, 2016, I appealed the decision of Mr. Sberna and the Board on the only grounds I could: (1) the hearing officer or Board failed to follow due process; and (2) significant information was discovered after the Board's hearing, such information could not have been presented to the Board, and the result of the hearing would have been different had the information been presented to the Board.

59. My appeal was summarily denied.

**Harm**

60. To this very day, I do not understand why I have been punished by The Citadel so harshly for an offense that I did not commit.

61. I have suffered and continue to suffer as a result of the actions of The Citadel, Lieutenant General John Rosa, Mr. Sberna, Captain John Ryan, Major Jon Craig, and Cadet Captain Lewis Jackson.

62. I will soon be dismissed from the Citadel. This will result in me losing the college education for which I have worked so hard. My reputation, self-esteem, and military career have also been badly damaged.

63. Additionally, should my studies at The Citadel not continue, I will lose my Army scholarship, which is worth approximately $200,000.

64. I have also lost my admission to Army Air Assault School, I will not be able to attend the Cadet Leadership Course this year (which will delay my professional advancement for at least one year) and I have a large and permanent barrier to achieving my childhood dream of having a long and fulfilling career in the military, as Hazing is categorically considered by persons in the military to be tantamount to a dishonorable discharge.

65. I fear that my entire professional career has been ruined.

66. My parents, whom have limited means, and I have also spent considerable sums on my behalf in helping me to defend myself.

FURTHER AFFIANT SAITH NOT.

This the 18th day of August, 2016.

[signature]
Robert Hudson Imhoff, IV

Sworn to and subscribed before me this the 18th day of August, 2016.

[signature]
Notary Public Signature

Reema Bhatia
Notary Public Printed Name

My Commission Expires: 05·21·2020

REEMA BHATIA
NOTARY PUBLIC
BALTIMORE COUNTY
MARYLAND
My Commission Expires 05-21-2020