UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| ROBERT HUDSON IMHOFF, IV,<br><br>Plaintiff,<br><br>v.<br><br>THE CITADEL, THE MILITARY COLLEGE OF SOUTH CAROLINA; LIEUTENANT GENERAL JOHN ROSA; LIEUTENANT COLONEL ROBERT SBERNA; CAPTAIN JOHN RYAN; MAJOR JON CRAIG; CAPTAIN LEWIS JACKSON<br><br>Defendants. | ) | Civil Action No.: 2:16-cv-2870-RMG<br><br>**AFFIDAVIT OF LIEUTENANT COLONEL ROBERT A. SBERNA USAF, (RET.), IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

PERSONALLY appeared before me, Lt Col Robert Sberna, USAF, (Ret.), who, being duly sworn, deposes and states as follows:

1. I am the Assistant Commandant at The Citadel, The Military College of South Carolina.

2. I graduated from The Citadel in 1976. I was commissioned a second lieutenant in the United States Air Force immediately after graduation.

3. During my career in the Air Force, I logged more than 2200 flying hours in T-37, T-43, T-39, B-52, and FB-111A aircraft. I subsequently served as the senior arms control and policy analyst in Strategic Air Command and Air Combat Command working arms control and treaty compliance issues instrumental to national security. I completed my career as the Deputy Commander of the 4th Support Group at Seymour Johnson AFB, North Carolina.

4. I completed Air Command and Staff College and Air War College.

5. After I retired from the Air Force, I accepted appointment as the Third Battalion Tactical Officer at The Citadel. I subsequently served as 1st Battalion Tactical Officer, from 2004 to 2008. In 2008, I became Director of Cadet Activities. In July of 2010, the Commandant of Cadets at that time, Col. Leo Mercado, USMC (Ret.), added to my responsibilities by appointing me Assistant Commandant for Discipline. I serve solely in that position today.

6. I was the presiding Hearing Officer for a March 10, 2016 Class I Hearing #22 ("Hearing") to address disciplinary charges against Plaintiff Robert Hudson Imhoff, IV ("Plaintiff") and another cadet ("Cadet A.M.").

7. Plaintiff has named the following individuals as Defendants in this lawsuit: Captain John Ryan, USA, Major Jon Craig, USA (Ret.), and "Captain" Lewis Jackson. While these individuals were present at the Hearing, they were only present as observers who may have provided some testimony. Indeed, Captain Ryan was an instructor in the Military Science Department at The Citadel; he maintains that position today. Major Craig was serving as the TAC officer – an adult advisor – for the cadet unit to which Plaintiff was assigned at the time Plaintiff committed the acts involved in this case. However, Maj. Craig was not assigned to that role until well after Plaintiff committed those acts. Lewis was a cadet in that cadet unit at the time of the hearing; he graduated from The Citadel in May, 2016. None of these three individuals served served in an adjudicatory or decision-making role whatsoever at the hearing. They had no involvement whatsoever in the finding that the charges against Plaintiff and Cadet A.M. had been "PROVEN." Moreover, they had no involvement whatsoever in the decision to recommend or impose any punishment upon Plaintiff or Cadet A.M.

8. Attached hereto as Exhibit 1 is a true and correct copy of two (2) handwritten statements prepared and signed by Plaintiff on February 4, 2016. The statements were part of the materials that I considered in making recommendations regarding the disposition of the charges against Plaintiff.

9. On February 8, 2016, investigating officers Lieutenant Colonel Jefferson Parton and Major Greg Speaker recommended that Plaintiff be charged with hazing. Attached hereto as Exhibit 2 is a document memorializing this recommendation, based on Plaintiff's admissions to engaging in the conduct alleged.

10. Attached hereto as Exhibit 3 is a February 9, 2016 Performance Report (PR) that I prepared and signed, formally accusing Plaintiff of violations of The Citadel's policies against hazing and obstructing an investigation.

11. Prior to the Hearing, Plaintiff signed a February 12, 2016 Explanation of Report, Written, a true and correct copy of which is attached hereto as Exhibit 4.

12. Plaintiff also signed a February 24, 2016 Explanation of Report, Written, a true and correct copy of which is attached hereto as Exhibit 5.

13. In the Explanations of Report, Written, Plaintiff admitted to engaging in conduct that violated the policies of The Citadel.

14. On or about March 11, 2016, I prepared a Memorandum memorializing the results of Class I Hearing relating to Plaintiff and Cadet A.M. ("Memorandum"). A true and correct copy of that Memorandum is attached hereto as Exhibit 6.

15. Attached hereto as Exhibit 7 is Discipline General Order No 89, which appointed me Hearing Officer for Class I Hearing #22.

16. At the Hearing, Plaintiff and Cadet A.M. were represented by Cadet 2LT P[redacted] A[redacted], in accordance with the policies and procedures of The Citadel.

17. During the Hearing, Plaintiff and Cadet A.M. had the opportunity to question each witness who presented information against them concerning the charges against them.

18. Plaintiff and Cadet A.M. were also afforded the opportunity to call witnesses of their own to testify at the Hearing.

19. Plaintiff and Cadet A.M. were also afforded the opportunity to testify on their own behalf at the Hearing.

20. Plaintiff was provided with lists of all potential witnesses prior to the Hearing.

21. Attached hereto as Exhibits 8 and 9, respectively, are copies of General Order No. 93 and General Order 93, Change 1, which identified the potential witnesses against Plaintiff and Cadet A.M. These documents were provided to Plaintiff prior to his Hearing to allow him an opportunity to prepare for the Hearing.

22. I considered all of the information presented during the Hearing and in the Plaintiff's written statements and Explanations of Report, Written (attached hereto as Exhibits 1, 3, and 4), including all of the information presented by Plaintiff and Cadet A.M.

23. The Memorandum details the conduct of the Hearing and the evidence presented at the Hearing.

24. In the Memorandum, I concluded that, based on the evidence, it had been proven that Plaintiff had committed the disciplinary violation of:

> Hazing-interfering or obstructing a disciplinary investigation, vandalizing knob brass, taking brass from knobs without reimbursement, stole company letters [redacted]s), impeded an investigation by taking all blitzed brass from the knobs when he discovered an investigation was being conduct and gave them to Cadet McGrath.

These are extremely serious offenses at The Citadel. A fourthclassman's (freshman's) brass is precious to him or her; fourthclassmen are required to keep their brass in impeccable, flawlessly polished condition and be prepared to display it for inspection at any time. They face discipline if it is not perfect. To scratch or otherwise damage a fourthclassman's brass is to condemn that fourthclassman to hours of work to remove the scratches and polish the brass. A fourthclassman has almost no unscheduled time, so to damage or – worse – take a fourthclassman's brass is conduct of a tyrannical and abusive nature, which meets the definition of hazing under Citadel Regulations.

21. Hazing is abuse of the power that an upper class cadet holds over his or her subordinates. Most of The Citadel's fourth class system is operated by cadets, which means that upper class cadets are entrusted with authority over subordinate cadets. The fourth class system is a powerful educational tool, but it will not operate properly if cadets abuse their authority. Officials at all levels of The Citadel emphasize, from the very first day that cadets report to The Citadel, that hazing is not tolerated at The Citadel.

25. I recommended that Plaintiff be suspended as a punishment for his conduct. Under The Citadel's Regulations, Plaintiff could have been dismissed or expelled for his offense. Dismissal is more severe than suspension, as a cadet who is dismissed must leave The Citadel for one year, at which time he or she can apply for readmission. Expulsion is more severe than dismissal, as a cadet who is expelled cannot ever reapply for admission.

26. Under Section VI of the College Regulations, the President of The Citadel has the ultimate authority to impose punishment. He may increase or decrease the punishment

recommended by a Class I Hearing officer, based on his review of a cadet's entire record, as well as his knowledge of previous disciplinary cases.

27. By Special Order D-44, dated April 8, 2016, Plaintiff was dismissed from The Citadel for one year. A true and correct copy of Special Order D-44 is attached hereto as Exhibit 10.

28. Plaintiff filed an appeal from the results of the Hearing, in accordance with the policies and procedures of The Citadel.

29. By Special Order D-44, Change 1, dated June 27, 2016, a true and correct copy of which is attached hereto as Exhibit 11, Plaintiffs appeal was rejected and his punishment made firm. Exhibit 11 hereto also includes a June 28, 2016 letter from Mark A. Bebensee, Ph.D., Associate Provost for Academic Affairs, to Plaintiff enclosing a copy of Special Order D-44, Change 1.29. According to the College Regulations, Plaintiff will be eligible to apply for readmission to the Corps of Cadets after two (2) semesters have elapsed from the implementation of his dismissal.

30. Plaintiff "may apply for readmission during the Spring 2017 semester for possible readmission to The Citadel in the Fall 2017 semester." (See Exhibit 11 hereto)

31. I based my decisions and recommendations regarding Plaintiff on my view of the evidence presented in this matter at the Hearing.

32. I never took any action to prevent Plaintiff or Cadet A.M. (or their representative) from presenting relevant evidence.

33. I never took any action to deprive Plaintiff or Cadet A.M. (or their representative) from having a meaningful opportunity to be heard regarding the charges against them.

34. I did not act with malice, ill will or any intent to harm Plaintiff in connection with the matters discussed herein.

29. The cadet disciplinary system is integral to The Citadel's holistic educational program. The Citadel's mission is "to educate and develop our students to become principled leaders in all walks of life by instilling the core values of The Citadel in a disciplined and intellectually challenging environment." Cadets are expected to adhere strictly to the college's

rules of conduct. Citadel cadets know that they can be punished, even expelled, for conduct that might draw little or no discipline at other colleges. It is believed that this rigorous discipline is critical to developing principled leaders. It would be detrimental to The Citadel's mission if its ability to enforce its rules and conduct disciplinary proceedings was impaired.

30. Pursuant to 28 U.S.C. § 1746, I declare, certify, verify, and state, under penalty of perjury, that the foregoing is true and correct.

Executed on August 21, 2016.

ROBERT A. SBERNA
LIEUTENANT COLONEL, USAF, (RET.)

SWORN TO before me this 2/5 day of August, 2016

Notary Public for South Carolina
My Commission Expires: 8/9/17